# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CASE NO. 25-mj-102 |
| MARK ANTHONY TUCCI | : | |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

Defendant Mark Anthony Tucci has been charged by Complaint with interstate communication of threats and cyberstalking. Given the nature and circumstances of the offense, as well as the defendant's history and characteristics, it is clear that there is no condition or combination of conditions that will reasonably assure the defendant's appearance as required and/or the safety of the community. For over a year, the defendant has repeatedly and relentlessly harassed and threatened members of this community, and these threats were fueled and ignited by the defendant's racist beliefs. This was not a crime of opportunity, greed, or desperation. This was a crime of ideology, which presents a danger that is particularly unmitigable when beliefs are so strongly held as to cause the defendant to engage in criminal behavior as a result of those beliefs. These beliefs in and of themselves are not what makes the defendant a danger to the community; rather, it is the defendant's willingness to *act* on those deeply-held beliefs in a way that causes harm to others, that makes this defendant a danger to the community.

For the reasons as explained below, the government moves pursuant to 18 U.S.C. § 3142(f) for a detention hearing and pretrial detention of the defendant. Pretrial Services has also recommended that the defendant be detained pretrial.

I. **FACTS**

    A. **The Charged Offense**

The defendant has been charged by Complaint with threatening to harm an employee of an agency of the City of Philadelphia (hereinafter "City Agency 1"), and for engaging in a course of conduct intended to cause substantial emotional harm to this employee (hereinafter "Victim 1").

The defendant had started contacting City Agency 1 in April 2024 to inquire about the status of a pending investigation relating to his child. On or about the afternoon of June 3, 2024, the defendant used his cellular telephone to call City Agency 1, and was connected to Victim 1. When Victim 1 answered the defendant's call, the defendant became irate and started yelling. Victim 1 asked him to stop yelling, and the defendant did not stop. Victim 1 hung up on him, and the defendant called back and continued to yell at Victim 1. Victim 1 hung up again. Then, the defendant sent text messages to Victim 1 on Victim 1's personal cell phone. Victim 1 had not provided, and had never provided, the defendant her personal cell phone number. On these messages, the defendant mentioned Victim 1 by name, mentioned the name of the street on which Victim 1 resided at that time, and said: "This is personal now … You wanna fuck with my family … Now your [*sic*] fucked." The defendant then wrote, "Can't hang up on me in person cunt."

On that same day, June 3, 2024, the defendant sent e-mails, using his personal e-mail address, to Victim 1's e-mail with the subject lines, "N\*\*\*er" [*expletive*], "Fat lazy n\*\*\*er [*expletive*]," "Typical racist n\*\*\*er [*expletive*]," and "No one was yelling fat lazy n\*\*\*er [*expletive*]." One of the defendant's e-mails to Victim 1 said, "You motherfuckers are gonna regret this shit. First time your lazy koolaid drinking ass picked up in weeks. Then you hang up

2

on your complicit in protecting these creeps let's hope they protect you n***er [*expletive*] Thank You Mark." As relevant to this proceeding, Victim 1 is African American.

The defendant continued to call City Agency 1 on that same day, June 3, 2024. That afternoon, the defendant was connected to another employee of City Agency 1 (hereinafter "Witness 1"). The defendant was irate, and repeatedly called Witness 1 a "n***er [*expletive*]." As relevant to this proceeding, Witness 1 is African American.

Using the caller ID from the Witness 1's phone, Witness 1's manager (hereinafter, "Witness 2") called the defendant back. The defendant answered and immediately began yelling at Witness 2 about the investigation relating to his child. The defendant demanded the records from the investigation. He then said he wanted to talk to Victim 1, whom he specifically mentioned by name. The defendant said he was going to come down to the City Agency 1 tomorrow and "hurt everyone." He also said he knows Victim 1's address and he was going to hurt Victim 1. The defendant repeatedly used the word "n***er" [*expletive*], and stated several times that he was a member of a national group.

City Agency 1 immediately reported the defendant to the Philadelphia Police Department.

B. **Additional Charges**

In addition to the conduct described in the Complaint, the government intends to present to the grand jury evidence relating to another crime committed by this defendant.

On February 1, 2024, just before 9am, Victim 2—who, as relevant to this proceeding, is African American—was driving southbound on I-95 to work. Traffic was heavy as it was rush hour. As Victim 2 approached their exit in Northeast Philadelphia, the defendant pulled up next to Victim 2 on their right side, and rolled down his driver side windows. The defendant screamed

3

at her, **"N\*\*\*er [*expletive*]! Oh you're a n\*\*\*er [*expletive*]! I'm going to kill you n\*\*\*er [*expletive*]!"** The defendant continued to scream, "I'm going to kill you n\*\*\*er [*expletive*]! I'm going to shoot you!" Victim 2 recalled that he screamed this at multiple times. Then, the defendant reached down into his car, pulled out a glass mug containing coffee, and threw it at Victim 2's car. Victim 2 was terrified. When Victim 2 saw the defendant reach down into his car, they believed that the defendant was reaching for a firearm. Victim 2 pulled off the I-95, and felt that they were having a panic attack. Victim 2 called the police.

A witness (hereinafter "Witness 3") was driving behind the defendant as this occurred, and their dash camera was recording. Witness 3 provided the dash camera footage to law enforcement.

C. **Other Pertinent Conduct, Including Defendant's Conduct Since His August 2024 Arrest in His Local Case**

For at least the past year, the defendant has engaged in threatening and abusive conduct, fueled or ignited by his racist beliefs. The below conduct, which the government submits by proffer, is not only evidence proving the defendant engaged in the charged (and to-be-charged) conduct, but is also evidence that the defendant's ideologies relating to race are deeply engrained. Moreover, this demonstrates the defendant's views of law enforcement and the court system, and his disrespect for these institutions, which makes it more likely that the defendant will not abide by his conditions of release.

For instance, in November 2023, the called and yelled at his chiropractor because the defendant was unhappy with a massager they provided him. The defendant called and texted the chiropractor's office several times, calling the chiropractor a "k\*ke" (a derogatory word referring

4

to Jewish people) and "jew" each time. The defendant claimed that he would ask his associates to leave 40 negative reviews for the chiropractor online.

Also, since at least December 2023, the defendant has repeatedly called police dispatch and 911 in Bucks County. These calls were recorded. On these calls, the defendant screamed at dispatchers, and demanded that law enforcement check on his child for him. The defendant also complained when he believed that a police officer, who had been sent at the defendant's request to check on his child, was Hispanic because of the officer's last name. The call, which took place on May 29, 2024, went as follows:

> TUCCI: Hi, I just received a call from an officer, Officer [*Officer Name*]. I'd like to be transferred to him if that's possible, but my first is going to be – is he of Spanish descent or Hispanic at all?
> DISPATCH: I don't know, sir, this is dispatch for all of Bucks County. Do you know what police department Officer [*Officer Name*] works for?
> TUCCI: Mmm I'm going to say, Warminster.
> DISPATCH: Good bet. I can put in a request for him to call you back because we can't transfer calls.
> TUCCI: Alright, no sweat you got it. Can you also say that if he's Hispanic, I'd rather be contacted by someone else. Because this involves race and it involves Hispanics being on one side, so I find it a bias already.

Then, on June 2, 2024, th e defendant had the following call with Bucks County dispatch:

> TUCCI: I'm looking to speak to Officer [*Officer Name*], is he on today?
> DISPATCH: He is not, you can call back later tonight, call after 7, he should be on then.
> TUCCI: [UI] Can I speak to someone now anyway? Cuz the guy … I feel like he's Hispanic and maybe he's just kind of heling because he kind of threw me under the bus here.
> DISPATCH: He is not, but ok.
> TUCCI: He is not what?
> DISPATCH: I wouldn't…
> TUCCI: Hispanic?
> DISPATCH: No.
> TUCCI: Ok, you wouldn't assume so you know that for sure?
> DISPATCH: Um, For sure.

TUCCI: Ok great, that's even better then. Makes me feel a little better.

Along the same lines, the defendant accused a New Jersey Superior Court of being biased toward him because this Judge is African American. On November 13, 2024, the defendant appeared before the New Jersey Superior Court Judge via Zoom for a hearing relating to a violation of a restraining order. The defendant claimed that the Judge was racist, was part of a "black fraternity" and a "black organization."

In October and November 2024, federal agents observed that the defendant started posting statements and images on Facebook indicating that he believes he is being surveilled and implicitly threatening that he will commit acts of violence. For example, on November 14, 2024, the defendant posted the below screenshot from the "Rambo" movie, which involves the main character destroying a sheriff's office and parts of the town as he escapes law enforcement, who had been harassing the main character:



On November 25, 2024, the defendant posted the below statements and images on his Facebook account:





### D. Maximum Penalties

The maximum penalties for cyberstalking: five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

The maximum penalties for interstate threatening communications: five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

Based on the charges in the Complaint, the total maximum sentence is 10 years' imprisonment, a $500,000 fine, three years' supervised release, and a $200 special assessment.

## II. ARGUMENT

As a preliminary matter, a detention hearing is required in a case like this, where the defendant has been charged with a crime of violence. Under 18 U.S.C. § 3142(f)(1)(A), the "judicial officer shall hold a hearing to determine whether any condition or combination of conditions … will reasonably assure the appearance of such person as required and the safety of any other person and the community … upon motion of the attorney for the Government, in a case that involves … a crime of violence." A "crime of violence" is defined under 18 U.S.C. § 3156(a)(4) to mean a crime where an element of the offense is "use, attempted use, or threatened use of physical force against the person or property of another." Here, interstate communication of threats (18 U.S.C. § 875(c)) is a crime of violence under that definition because the statute includes threat to injure as an element. *See United States v. Dai*, 99 F.4th 136 (2d Cir. 2024) (finding that interstate communication of threats is a "crime of violence" and subject to 18 U.S.C. § 3142(f)(1)(A)).

The defendant not only presents a risk that he will not appear in this case as required, but he also presents a danger to the community. There are no conditions that can assure his appearance and the safety of the community. Each of the factors under 18 U.S.C. § 3142(f)(1)(A)).

First, the circumstances of this offense, coupled with the defendant's history and characteristics, show that the defendant is a danger to the community. The facts of this case demonstrate that the defendant has been willing to act out on his racist beliefs. To be clear: the government has not prosecuted the defendant because of his ideology. Anyone is free to believe whatever they wish, no matter how abhorrent those beliefs are. The defendant was investigated by law enforcement because he committed criminal acts, that were motivated by those beliefs. Along the same lines, the Court may consider the nature of the defendant's beliefs and his willingness to act on them when assessing factors relevant for determining whether pretrial detention is appropriate, including the likelihood that the defendant will engage in future criminal conduct. *See e.g.*, *United States v. Desimas*, 2021 WL 289336, at *2 (W.D. Wa. Jan. 28, 2021) (finding that the defendant's "deep bias and racist views about a nd towards Black persons" weighed in favor of pretrial detention, stating that the "totality of the defendant's acts and conduct demonstrate that he is a danger to any Black person, including the victims and other witnesses … ."); *United States v. Hale-Cusanelli*, 3 F.4th 449, 455-56 (D.C. Cir. 2021) (not plain error where the district court considered evidence of prior uncharged conduct as evidence of the defendant's having acted violently based on his racial animus in determining pretrial detention). *Cf. United States v. Miner*, 2022 WL 7214447, at *2 (2d Cir. Oct. 13, 2022) (affirming sentence where the district court considered that the defendant's "white nationalist ambitions" and "racist, anti-Semitic, [and] misogynistic views" was evidence that the defendant presented a danger to

the community in imposing a sentence); *United States v. Stewart*, 686 F.3d 156, 170 (2d Cir. 2012) (evidence of beliefs or associational activities may be weighed by the sentencing court so long as they are relevant to prove permissible sentencing factors, such as motive).

It is clear that the defendant will continue to commit crimes, and harass, abuse and threaten members of the public, including government employees. The defendant poses a danger to the community.

Second, the evidence against this defendant is strong. The defendant committed the charged offenses using his own personal e-mail address and phone number. The defendant admitted to his conduct in a recorded interview. Moreover, the defendant faces up to 10 years of imprisonment for these crimes, and that statutory maximum will be even higher if the grand jury returns an indictment charging the defendant with additional offenses. This is more time in prison than the defendant has ever served, which creates a risk that the defendant will flee to evade prosecution and punishment.

Third, the defendant poses a risk of nonappearance because of his work and home status. The defendant is unemployed and has been unemployed since January 2024. Prior to his arrest in this federal case, he had lived with his parents and his daughter. Just before his arrest in this federal case, the defendant was no longer living with his parents. His parents have confirmed to Pretrial Services that if he were to be released, the defendant could live with them, but that they would be unable to properly monitor his compliance with conditions of release. The defendant's parents advised that he does not have anywhere else to live.

Finally, Pretrial Services has recommended pretrial detention.

For these reasons, the government submits that pretrial detention is appropriate and necessary in this case.

## III. <u>CONCLUSION</u>

The evidence in this case is strong and the allegations are serious, and the defendant's history, characteristics, and circumstances demonstrate that there are no conditions that will reasonably assure the presence of defendant as required and the safety of the community. The government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

        Respectfully submitted,

        JACQUELINE C. ROMERO
        United States Attorney


        <u>/s/ J. Jeanette Kang</u>
        J. JEANETTE KANG
        Assistant United States Attorney

# CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served by electronic mail, on the following defense counsel:

Douglas Stern, Counsel for Defendant

                                      /s/ J. Jeanette Kang
                                      J. JEANETTE KANG
                                      Assistant United States Attorney

Date:   January 27, 2025