IN THE UNITED STATES DISTRICT COURT

FOR THE EASTER DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs | : CRIMINAL NO. 25-CR-82 (GAM) |
| MARK ANTHONY TUCCI | : |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

    Defendant has plead guilty to two incidents in which the victims were black involving racial slurs/threats and threats of violence.[1] The first case was a "road rage" incident in which racial threats, threats of violence and throwing a cup at the victim's car. The victim suffered emotional distress and fear as a result of Defendant's actions. The second case involves a DHS worker for the City of Philadelphia. This case was a cyberstalking case that involved the defendant calling the worker and DHS numerous times using racial slurs and threats of violence. Defendant was trying to find out who has reported him to DHS for possible child abuse. This victim also suffered emotional distress.

    Contrary to the Government's memorandum, Defendant has fully accepted responsibility for his actions, is remorseful and is now being properly treated for his mental illness that he suffers from. Contrary to the Government's memorandum, Defendant is not using his mental illness to avoid acceptance of responsibility or downplay what happened to victims. It was not until Defendant was in Federal custody that he was properly diagnosed. Defendant is now being

---

[1] Defendant was original charged in state court for these two incidents with ethnic intimation and related charges. Defendant was prepared to plead guilty in state court when these case were adopted by the Federal Government since the civil rights unit of the DOJ wanted to prosecute for deprivation of the victims' right under Federal Law.

1

properly treated for his condition and is a different person. Defendant is asking for a sentence that is below the guidelines and will address this request as set forth below.

**1. BACKGROUND**

Defendant does not dispute the charges that he plead guilty to nor the facts that he plead guilty to. Defendant also agrees with the PSI report's versions of the facts and the Government's version of the facts.

Defendant agrees with the Government's sentencing process statement and the §3353(a) factors that the Court needs to consider. Defendant will respond and provide what considerations should be given to Defendant before imposing a sentence.

**A. MENTAL HEALTH DIAGNOSIS AND TREATMENT HISTORY**.

Defendant would only add the following facts that lead up to Defendant wanting to plead guilty. When defendant was initially arrested by the special agents assigned to his case, he immediately wanted to cooperate and gave a statement to the agents with counsel present. Defendant was clearly manic, paranoid and suffering from mental illness at this time. Search warrants were issued to see if any weapons, additional evidence or other evidence of motive could be located. No weapons were recovered and the motive evidence was listed in the plea agreement. It should be noted that motive evidence was not charged as a crime and just went to show that Defendant acted in a racist manner toward black people and other minorities and had racist materials on some of social media accounts.

Defendant agreed to detention. While in custody, counsel for defendant was concerned that Defendant was suffering from a mental illness and needed to be examined by a doctor. Defendant was examined by Dr. Cooney-Koss and she wrote a report that found that Defendant

was suffering from mental illness and was not competent to stand trial at that time. Dr. Cooney-Koss did conclude that Defendant suffered from schizoaffective disorder, bi-polar type that includes delusional thoughts, OCD and paranoid behavior. Dr. Cooney-Koss found that Defendant's paranoid thinking caused him to think that he was being harmed by others and to lash out with harsh verbal assaults and threats. Dr. Cooney-Koss concluded that Defendant needed pharmacological treatment. See Dr. Cooney-Koss's report and the PSI which references these conclusions.[2] (See PSI pages 19-20).

As result of this report, the Government wanted Defendant to be examined by a Government doctor at a FDC. Defendant was transferred to FDC Brooklyn for competency and evaluation.  Dr. Jenkins was able to observe Defendant for a longer period of time and she able to prescribed him medication to help his condition(s). Dr. Jenkins stated that Defendant suffered from anxiety disorder and ADHD. Dr. Jenkins did opine that his actions were triggered by various situation which caused Defendant to act in a compulsive manner Dr. Jenkins found that Defendant was competent to stand trial and prescribed him medications. (See Dr. Jenkins's report that has been submitted to court and PSI report at page 20).

It was at this point, Defendant's mental health changed for the better and he is now a different person who fully understands that he suffers from mental illness and needs to take medication to control his condition. It should be noted that both of the Defendant's parents were interviewed by the pre-sentence investigator. The PSI investigator interviewed both parents.

---

[2]. The pre-sentence report indicated that Defendant did have a history of mental illness The defense would conclude that Defendant never received the proper treatment which eventfully lead to his behavior and his mental state deteriorating over the years resulting in frequent paranoid and anti-social behavior.

Defendant's mother stated since 2000 Defendant has been acting in increased paranoia, compulsiveness and anger. Likewise, Defendant's father stated that Defendant is a different since receiving treatment for mental health condition since incarceration. He states the change was like "night and day" (See PSI page 17-18).

**B. MOTIVE EVIDENCE**

Defendant agrees to the motive evidence that he plead guilty to, but would argue that evidence was a limited time frame and coincides with his mental health condition. That is, Defendant was clearly influenced by the "Proud Boys" and admits so in the PSI. Defense would suggest that any association was transitory and he no longer associates with this group. Likewise, the other motive evidence seems to be limited to the last couple years. Since Defendant's arrest and incarceration, none of this type of racist behavior has surfaced. Defendant has no prison infractions, no complaints of acting in a racist manner nor associating with any racist groups or individuals in the FDC. Defendant is liked among the inmates and even has character letters. See attached letters or will supply.

Since being on medication, Defendant's anger issues, compulsive behavior and racist tendencies have subsided.

**2. SENTENCING GUIDELINES**

Defendant is not disputing the statutory maximums and fines as set forth in the Government's memorandum and PSI report.

As to the sentencing guideline calculations. These calculations are not disputed. The only dispute was that to the USSG §3A1.1(a) 3 points since the victims race was involved. After reviewing the this upward departure and the Government's response, Defendant would withdraw

this objection.

Defendant strongly disagrees with the Government's statement that he is "shirking responsibility" because of mental illness. Defendant is just explaining how he got to this point in his life. Defendant has accepted that his actions are wrong and done everything he could do accept responsibility in a timely manner.

**3. DEFENDANT'S RECOMMENDATION FOR SENTENCING**

Defendant is not disputing how the guidelines are applied, but only that Court can mitigate Defendant's sentence. Likewise, Defendant agrees with 3353(a) factors that the Court should consider. The guidelines call for 31-41 month (2.5 years to 3.4 years). Defendant has been incarcerated almost 11 months. Defendant has adjusted to being in custody and is now being properly treated for his mental illness.

**A. NATURE AND CIRCUMSTANCES OF THE OFFENSE**:

The Defense agrees that the nature of these offenses can never be justified in a civil society where everyone should be treated equally and not subject to racist threats/slurs and aggressive behavior because of their race. Defendant would point out that all he can do at this point is apologize to the victims. Defendant wants the Court to know that is that wants a chance to prove to society and the victims that he has changed his ways since being treated for his mental illness. Defendant has tried to mitigate and not make the victims re-live what happened by pleading guilty. At stated throughout Defendant's memorandum, Defendant clearly suffers from mental illness. Because Defendant was never properly treated for his mental illness, he was unable to control his anger and paranoia and would act in racist manner. Since being treated, Defendant is a different person and has accepted that he has mental illness, anger problems and

5

racist tendencies that need to be addressed. Defendant wants the victims to know that is sorry he is ready to accept his punishment.

**B. NEED TO DETER AND PROTECT THE PUBLIC**:

Defendant agrees that a guideline sentence is appropriate in this case, however, Defendant would argue for a sentence of 24 months as an appropriate deterrence or at the very low end of the guidelines since the Government is agreeing that even 31 months could be appropriate. Since being incarcerated Defendant has changed his behavior to point where he is not as impulsive, paranoid and angry. Defendant now understands that he was out of control and needed the proper medication. Defendant will continue with treatment and not be a threat to anyone upon release. Defendant has not had any prison infractions since being incarcerated nor have there been any references to Defendant acting in a racist manner. Two years is a significant sentence and will deter others.[3]

The PSI reports shows that Defendant has a work history and he has never been convicted of a crime. Upon release Defendant would move back with parents and his minor daughter. Defendant would continue with his mental health treatment, attend therapy for anger issues and other issues as well as maintaining employment. The PSI report indicates the same and that Defendant living with his parents upon release is a suitable arrangement.

**4. DEFENDANT'S NEED FOR APPROPRIATE MEDICAL TREATMENT**

Defendant agrees with the Government memorandum that Defendant has been diagnosed with mental health disorders, to wit: schizoaffective disorder, bipolar type, generalized anxiety

---

[3]. See press release for: TAREK BAZROUK was sentenced on October 28, 2025 to 17 months in prison for committing hate crimes in connection with his repeated assaults of Jewish victims in New York City between 2024 and 2025.

disorder, obsessive compulsive disorder, posttraumatic stress disorder, and caffeine use disorder, and then with generalized anxiety disorder and other specified attention deficit/hyperactivity disorder (See PSI pg 19-20). Defendant's mental disorders do explain his uncontrolled behavior and need for treatment. Likewise, Defendant has shown that he is amenable to treatment and wants to continue with treatment upon release. Defendant is different person when he being treated properly for mental health conditions. Since Defendant is now stable, a two year sentence would be appropriate to make sure treatment is effective..

### 5. THE NEED TO PROVIDE RESTITUTION TO VICTIMS:

Defendant agrees with the Government that restitution is applicable to case. The Defendant leaves it up to the Court as amount that Defendant needs to pay. Defendant's financial situation shows that he had a work history and has credit card debt since be incarcerated.

### 6. CONCLUSION:

Defendant has done everything he could to take responsibility for his actions. Defendant agreed to plea to an information and not burden the Government with proving their case at a trial and not making the victims re-live the crimes that took place by having his racist slurs and rants heard in open court. Defendant was able to be properly diagnosed for his mental health and receive the proper treatment which is the crux of this case. Defendant is no longer the person he was on the date he was arrested. Defendant can never justify his actions to his victims and instead has accepted punishment. Defense would argue that his mental health explains why he acted this way. Defendant's connections to the Proud Boys sounds like a key piece of motivation evidence, but it was short lived. Defendant has no more. Once again, since being on medication, Defendant's anger and racist tendencies seem to in remission. Finally, when Defendant has the

chance to speak to Court and the victims, he will demonstrate his remorse, acceptance of responsibility and how he has changed for the better. Defendant will also provide some character letters and testimony from his parents at the time sentencing so that court can see that an two years sentence is the appropriate deterrence and punishment.

BY:<u>/S/DOUGLAS N. STERN</u><br>
DOUGLAS N. STERN, ESQUIRE<br>
Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTER DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**         :

**vs**                                : CRIMINAL NO. 25-CR-82 (GAM)

**MARK ANTHONY TUCCI**                :

### CERTIFICATE OF SERVICE

I, Douglas N. Stern, Esquire, attorney for Defendant certifies that November 26, 2025, he served a true and copy of the foregoing Defendant's Sentencing Memoradum on the below listed individuals by ECF and email:

Michelle L. Morgan, Esquire
United States Attorney's Office
615 Chestnut St, Suite 1250
Philadelphia, PA 19106

Samuel Kunh, Esquire
United States Attorney's Office
150 M. Street, NE
Washington, DC 20002

New York Man Sentenced To 17 Months In Prison For Hate Crimes After Repeatedly Assaulting Jewish Victims

Friday, October 31, 2025

For Immediate Release

U.S. Attorney's Office, Southern District of New York Jay Clayton, the United States Attorney for the Southern District of New York; Christopher G. Raia, the Assistant Director in Charge of the New York Field Office of the Federal Bureau of Investigation ("FBI"); and Jessica S. Tisch, the Commissioner of the New York City Police Department ("NYPD"), announced that TAREK BAZROUK was sentenced on October 28, 2025 to 17 months in prison for committing hate crimes in connection with his repeated assaults of Jewish victims in New York City between 2024 and 2025.  The sentence was imposed by U.S. District Judge Richard M. Berman.

"Tarek Bazrouk repeatedly attacked Jewish victims at protests relating to the Israel/Hamas war," said U.S. Attorney Jay Clayton.  "He targeted these New Yorkers based on their religion and national origin.  And he was undeterred by multiple arrests following these assaults, instead quickly returning to violently targeting Jews.  The prosecution of this case and the sentence imposed make clear that New Yorkers will not tolerate hate-based violence and that this Office will aggressively prosecute those who perpetrate senseless crimes of hate."

FBI Assistant Director in Charge Christopher G. Raia said: "Despite repeated arrests, Tarek Bazrouk continued to attack Jewish victims while shamelessly expressing his hatred for those of the Jewish faith and demonstrating his support for anti-Semitic terrorist organizations. Bazrouk's relentless torment violated these New Yorkers' ability to safely express their beliefs through protests and religious outerwear. May this sentencing highlight the FBI's intolerance of any individual who allows hate and prejudice to justify violent rhetoric and actions against others."

NYPD Commissioner Jessica S. Tisch said: "Tarek Bazrouk not only targeted and assaulted his victims because of their faith — he attacked every Jewish New Yorker who should be able to practice their religion freely and without fear," said NYPD Commissioner Jessica S. Tisch. "This sentencing sends a clear message: antisemitism or any act of violence driven by hate will never be tolerated in our city, and the NYPD will continue to hold accountable anyone who threatens the religious identity of New Yorkers. I thank the NYPD investigators, the FBI, and the prosecutors in the U.S. Attorney's Office for their unwavering work in bringing Tarek Bazrouk to justice."

According to the Indictment, other public filings, and statements made in court:

Over the course of approximately nine months, BAZROUK physically assaulted three Jewish individuals at protests concerning the Israel/Hamas war.  First, on April 15, 2024, BAZROUK—while wearing a green headband typically worn by Hamas terrorists—attended a protest concerning the Israel/Hamas war in Lower Manhattan, outside the New York Stock Exchange.  During the protest, BAZROUK was arrested by officers from the NYPD after lunging

at a group of pro-Israel protestors.  As BAZROUK was being escorted to an NYPD vehicle, BAZROUK kicked a different individual—Victim-1, a Jewish college student—in the stomach.  At the time of the assault, Victim-1 was standing near other Jewish protestors, who were wearing kippahs (that is, brimless skullcaps traditionally worn by Jewish men), carrying Israeli flags, and singing Jewish songs.

Approximately eight months later, on December 9, 2024, BAZROUK assaulted another individual at a protest relating to the Israel/Hamas war next to Columbia University.  The victim of the second assault—Victim-2—is a Jewish student who attended Columbia.  On the date of the assault, Victim-2 and his brother were wearing kippahs, Victim-2 had an Israeli flag draped around his shoulders, and Victim-2 was singing Jewish songs.  As the protest continued, BAZROUK—with his mouth covered—stole an Israeli flag from Victim-2's brother and fled.  After Victim-2 and his brother followed BAZROUK through a crowd to retrieve the flag, BAZROUK snuck up beside Victim-2 and struck him in the face with a closed fist.

Roughly one month later, on January 6, 2025, BAZROUK assaulted a third Jewish victim—Victim-3—at a protest concerning the Israel/Hamas war near 1st Avenue and East 18th Street in Manhattan.  At this protest, Victim-3 was wearing an Israeli flag around his shoulders, a hat with an Israeli flag, and a chain with a Jewish star.  During the protest, BAZROUK, who was wearing a keffiyeh on his face, made contact with Victim-3's shoulder and wrapped his foot around Victim-3's ankle.  Victim-3 attempted to push BAZROUK away and cursed at him.  BAZROUK then punched Victim-3 in the nose with a closed fist.

Pursuant to judicially authorized warrants, law enforcement subsequently searched cellphones used by BAZROUK.  Evidence from those devices revealed BAZROUK's anti-Semitic bias and his support for anti-Jewish terrorist groups including Hamas, demonstrating his motivation for repeatedly assaulting Jewish victims.  In text messages, for example, BAZROUK identified himself as a "Jew hater," labeled Jews as "worthless," extorted "Allah" to "get us rid of [Jews]," called an acquittance a "Fucking Jew," and told a friend to "slap that bitch" in reference to a woman with an Israeli sticker on her laptop.  BAZROUK also told a friend that he was "mad happy" to have learned that certain of his family members overseas are part of Hamas.  BAZROUK's phones also contained extensive pro-Hamas and pro-Hizballah propaganda, showing his support for organizations that have murdered thousands of Jews and Israelis.

In addition to his prison term, BAZROUK, 20, of New York, New York, was sentenced to three years of supervised release.

Mr. Clayton praised the outstanding work of the FBI and thanked the Manhattan District Attorney's Office and the NYPD for their assistance.

This case is being handled by the Office's Civil Rights and Human Trafficking Unit in the Criminal Division.  Assistant U.S. Attorneys Sam Adelsberg and Jim Ligtenberg are in charge of the prosecution.  USAO - New York, Southern

All parties listed in ECF.

                                      BY:/S/DOUGLAS N. STERN
                                            DOUGLAS N. STERN, ESQUIRE
                                            Attorney for Defendant

Date: 11/25/2026